UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re

STALLWORTH TIMBER COMPANY, INC.,                        Case No. 03-11499-WSS-7

    Debtor.

SOUTHTRUST BANK,

    Plaintiff,

v.                                                         Adversary Case No. 04-01009

THEODORE HALL, as Trustee,
and the UNITED STATES OF AMERICA,

    Defendants.

## AMENDED ORDER

    Charles Baer, Counsel for United States of America
    D. Charles Holtz, Counsel for SouthTrust Bank
    Theodore L. Hall, as Trustee

This matter is before the Court on the cross motions for summary judgment filed on behalf of the United States of America (hereinafter referred to as the "United States"), SouthTrust Bank (hereinafter "SouthTrust"), and Theodore L. Hall, as Trustee in bankruptcy (hereinafter "Trustee") in a declaratory judgment action initiated by SouthTrust. The motions for summary judgment, and the exhibits and affidavits attached thereto, were argued before the Court and the matter was taken under submission. Memorandum of Law and proposed Findings of Fact have been provided to the Court by the movants. The parties are in agreement that the case should be decided by summary judgment and that the facts are not in dispute. After

1

considering the motions and having reviewed all of the exhibits, affidavits and briefs of law, the Court makes the following findings of fact and conclusions of law.

FACTS

This proceeding concerns certain real property located in Monroe County, Alabama. The property was included in three separate mortgages to SouthTrust securing the indebtedness of the debtor, Stallworth Timber Company, Inc. ("Stallworth Timber"). The first mortgage, recorded at Book 489, Page 181, Monroe County Records, was dated April 26, 1996 ("1996 mortgage") and was from Diane Stallworth and Louise B. Owens to SouthTrust. The third mortgage, from Diane O. Stallworth and Stallworth Timber, was dated June 16, 2000 and recorded at Book 571, Page 58 of the Monroe County Records ("2000 mortgage"). Another mortgage was executed by Diane O. Stallworth in 1998 ("1998 mortgage"), but is not at issue in this case because the only property included in that particular mortgage was the property that SouthTrust agrees was to be released.

On May 14, 2002, a Consent Decree and Order were entered in the case *United States of America v. Stallworth Timber Co., Inc.*, Case No. CV-02-0864A, United States District Court, Western District of Louisiana. On August 2, 2002, a release and cancellation of mortgages (hereinafter referred to as "the release"), was executed by SouthTrust Bank and filed in Book 713, Page 147 of the Monroe County Records. In that release and cancellation, SouthTrust referenced both the 1996 mortgage and the 2000 mortgage as well as the other mortgage which is not at issue.

On October 7, 2002, the United States recorded an abstract of judgment of the May 14, 2002 Consent Decree and Order against Stallworth Timber in the Monroe County Probate Court Records. The parties have stipulated that said recording is sufficient to amount to a certificate of

judgment within the meaning of Alabama law. On March 14, 2003, Stallworth Timber filed a Chapter 7 petition in this Court.

SouthTrust filed its complaint seeking a declaration that the effect of the release was to only release a certain identifiable 540 acres from the mortgages securing the Stallworth Timber debt. The United States and the Trustee each answered by denying that SouthTrust was entitled to such a declaration, and that instead, the release had the effect of fully and completely canceling each of the three mortgages. The Trustee's motion for summary judgment is based on the strong arm powers of 11 U.S.C.§ 544(a) of the Bankruptcy Code, which vests a trustee with the powers of a hypothetical judgment lien creditor and the rights of a bona fide purchaser of property for value under § 544(a)(3). Both powers relate to the debtor's property or rights to property and are governed by state law. The United States and the Trustee each claimed to have priority over the other. A copy of the release is attached to this opinion and made a part hereof.[1]

The fourth line of the opening "Whereas" paragraph in the release states that the 1996 mortgage covered "approximately 540 acres of land in Monroe County . . ." and refers to no other property. The next part of that paragraph refers to the 1998 mortgage and says that it covered "the same said lands . . . ." The last part of the same paragraph refers to the 2000 mortgage and also says that it covered "the same said lands." That paragraph refers to no property other than the single reference to the "approximately 540 acres of land in Monroe County" and the two references to "the same said lands."

The second "Whereas" paragraph states that the parties "desire to release the property *from* the mortgages and to cancel same." (Emphasis added.).

---

[1] Because the copy of the recorded release was barely legible, a re-typed copy is attached as Exhibit "A".

3

The concluding paragraph then states as follows:

"THEREFORE, SouthTrust Bank, the holder of said mortgages, does hereby fully and completely release and cancel *from* said mortgages."

(Emphasis added.) Nothing is stated in that paragraph as to what is being released and canceled "from" the mortgages.

The property description in the 1996 mortgage includes "Tract One" and "Tract Two". Tract Two includes separate descriptions of "Parcel One" and "Parcel Two". Immediately following the description of Parcel Two is the following language:

"The above described Tract Two (Parcels One and Two) contain, in the aggregate, 540 acres, more or less."

The property making up Tract Two is described entirely in fractional portions of Section 4 and Section 9 in Township 7 North, Range 9 East in Monroe County. The addition of the acreage in the various fractional portions shows that they add up to 540 acres, based on a standard 640 acre section. The property description in the mortgage also describes "Tract One" by metes and bounds, which it states is in Section 19 of a different Township and Range than the 540 acres. Tract One is part of the Stallworth Timber industrial site.

The 1998 mortgage included only the property which is referenced in the 1996 mortgage as "Tract Two", including "Parcel One" and "Parcel Two" containing, the approximately 540 acres. The parties agree that, since this is the only property described in the 1998 mortgage, that mortgage was due to be cancelled in its entirety.

The 2000 mortgage includes a description of five separate "Tracts". The descriptions of "Tract One" and "Tract Two" in the 2000 mortgage are identical to the descriptions of those same numbered tracts in the 1996 Mortgage, even down to the separation of "Tract Two" into "Parcel One" and "Parcel Two" and the statement that all of "Tract Two" contains "in the

4

aggregate, 540 acres, more or less". This is followed by metes and bounds descriptions of three additional tracts, identified as "Tract Three - Pole Peeling Mill", "Tract Four - Dry Kiln Plant", and "Tract Five - IDB Lands". "Tract One" and "Tracts Three" through "Five" are all part of the Stallworth Timber industrial site, and are located in the same Section 19, in which none of the 540 acres are located.

CONCLUSIONS OF LAW

This Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. §157 and the Order of Reference from the District Court. This is a core proceeding under 28 U.S.C. § 157 (b)(2)(k). This is an adversary proceeding under Bankruptcy Rule 7001 (2) and (9).

Bankruptcy Rule 7056 provides that Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div.,* 932 F.2d 1384, 1387-88 (11th Cir.), *cert. denied,* 502 U.S. 925 (1991); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). A plain reading of Rule 56(c) dictates that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). Only disputes over facts relevant to the ultimate outcome of a case are material. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id* at 248. *See also, United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir. 1991); *Sintz, Campbell, Duke and Taylor v. United States*, 197 B.R. 351, 352

5

(S.D. Ala. 1996).

The nonmoving party may not rest on mere allegations. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997); *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990); *Townson v. Secretary of Treasury,* 896 F. Supp. 1155, 1157 (S.D. Ala. 1995). Moreover, the courts will not entertain immaterial or insubstantial doubts as to material facts to defeat a summary judgment motion. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Co.,* 587 (1986); *Townson,* 896 F. Supp. at 1158. Rather, the nonmoving party must come forward with evidence that is "significantly probative," in the sense that it creates an issue which may not be resolved until the trier of fact has the opportunity to assess the credibility of the witnesses. *Liberty Lobby,* 477 U.S. at 250; *Sintz*, 197 B.R. at 354.

In this case, the Court must consider whether the language of the release is ambiguous. If the language of the release is unambiguous, then any facts that do not appear within the four corners of the release will not apply and the Court must make its decision as to the meaning of the release as a matter of law based on the release language. If the Court determines that the plain meaning of the release is that all of the mortgages are being canceled in their entirety, then the claim of SouthTrust is due to be denied and the Court would then determine the priority issue between the United States and the Trustee.

If the Court determines that the release is ambiguous, then evidence must be considered in order to determine what the release means. The basic rule of construction to be applied is to determine the intent of the parties to the release at the time the release was entered into. See, *Parr v. Godwin*, 463 So.2d 129, 132 (Ala. 1984).

> The threshold question--whether a release is ambiguous--is a question of law to be decided by the Court, see, *Baker v. Blue Circle, Inc.*, 585 So. 2d 868 (Ala. 1991). If the Court finds the release to be unambiguous, then the construction and legal effect of the release are questions of law, which, under appropriate circumstances,

6

may be decided on a motion for summary judgment. See, *Baker v. Blue Circle, Inc.,* supra. However, if the Court determines that the terms of the document are ambiguous in any respect, then the true meaning of the document becomes a question for the factfinder. See, e.g., *McDonald v. U.S. Die Casting & Development Co.*, 585 So.2d 853 (Ala. 1991).

*Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.,* 622 So.2d 314, 316-17 (Ala. 1993).

> [I]f the trial court finds the contract to be ambiguous, it "must employ established rules of contract construction to resolve the ambiguity." *Voyager Life Ins. Co. v. Whitson*, 703 So.2d 944, 948 (Ala. 1997). If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise:
> "If one must go beyond the four corners of the agreement in construing an ambiguous agreement, the surrounding circumstances, including the practical construction put on the language of the agreement by the parties to the agreement, are controlling in resolving the ambiguity." *Id*. at 949.

*Alfa Life Insurance Corp. v. Johnson*, 822 So. 2d 400, 405 (2001).

The United States maintains that the release canceled the three mortgages in their entirety and that the intent of the parties to only release 540 acres of land from the mortgage is immaterial as to the determination of rights of a third party without notice. *In re Haas,* 31 F.2d 1081, 1086 (11th Cir. 1994); *Sagamore Park Centre Associates v. Sagamore Park Properties*, 200 B.R. 332, 339 (N.D. Ind. 1996). The argument of the United States is that if the mortgages were satisfied by mistake, a judgment lien creditor whose lien attaches after the erroneous release of a mortgage is protected as an innocent third party. *Haas*, 31 F. 3d at 1086.

Secondly, the United States has urged the Court to determine that the release is not so ambiguous as to put judgment creditors on notice. To bolster their position, they refer to the title of the document which is "Release and Cancellation of Mortgages," and the fact that the release is not entitled as a partial release. The release also states that SouthTrust "does hereby fully and completely release and cancel from said mortgages." The United States requests the Court to find that a bona fide purchaser should be entitled to assume that a document that is entitled "Release and Cancellation of Mortgages" and contains the other language referred to above, does

7

in fact release and cancel the mortgages in their entirety.

This Court has recently held that the standard for inquiry notice is not whether the title records would arouse the suspicion of a lawyer or a title examiner, but whether the record shows facts that would cause a reasonable lay person to make inquiry. *In re Crutchfield,* Case No. 02-12671, Order Overruling Debtor's Objection to Claim of Morgan and Blake Kitchens, April 21, 2004. *See also*, *Manning v. Wingo,* 577 So. 2d 865, 868 (Ala. 1991) (quoting *Rolling "R" Constr., Inc. v. Dodd*, 477 So. 2d 330, 331-332 (Ala. 1985). If that were the only language in the release, perhaps this Court would agree with the United States. However, the Court cannot ignore the language of the entire document.

The United States contends this case is controlled by the case of *In re Haas*, 31 F.3d 1081 (11th Cir. 1994). In *Haas*, a bank had executed and recorded a release in the Mobile County Probate Court of its mortgage on the property of its customer who subsequently filed a petition in bankruptcy. Between the recording of the release and the filing of the petition, the IRS filed a tax lien, although it learned of the mistaken cancellation before doing so. There was no dispute regarding the meaning shown by the terms of the release, which was apparently clear and unambiguous. There was also no dispute regarding the actual intent of the parties, which was that the mortgage should not have been cancelled. However, the actual intent under those circumstances was immaterial. The Eleventh Circuit first held that a judgment lien creditor without notice was entitled to priority over an erroneously cancelled mortgage. The Court also held that the "hypothetical lien creditor" test applied, and so actual knowledge of the mistaken cancellation was also irrelevant. In *Haas*, there was no reason for discussion of the possible effect of an ambiguous release. For that reason, *Haas* is not controlling here.

The title of the release in this case is "Release and Cancellation of Mortgages," which, in

8

and of itself, is not ambiguous. The United States puts much emphasis on this. However, in the concluding language in the release, which states that SouthTrust "does hereby fully and completely release and cancel from said mortgages," the word, *"from"*, is clearly out of place. The United States does not offer any explanation for the use of that word, and the Trustee simply contends that its inclusion was a mistake. Without the inclusion of "from", the concluding language would be entirely consistent with the title of the instrument. With "from" in the instrument, either something seems to be missing from the sentence, as SouthTrust contends, or the word seems to have been inadvertently included, as the United States and the Trustee contend. The fact is, however, that the word, "from", does exist where it exists.

The title of an instrument is entitled to no weight in construing an otherwise unambiguous instrument. *Wayne J. Griffin Electric, Inc. v. Dunn Construction Co.,* 622 So. 2d 314, 317 (Ala. 1993). Also, "single provisions or sentences are not to be disassociated from others referring to the same subject matter." *Id.* It follows, therefore, that an unambiguous title cannot be deemed to be the controlling factor in construing an ambiguous instrument.

"[I]n construing written instruments, . . . [courts in Alabama must] give to every word and phrase some meaning, if possible." *Smith v. Holt v. Mobile Navigation and Mutual Insurance Co.*, 30 Ala. 167 (1857); *accord*, *Royal Insurance Co. v. Thomas,* 879 So.2d 1144, 1154-55 (Ala. 2003). Though the word "from" is a simple preposition, the Court is not at liberty to disregard it without first trying to determine if it may have some meaning in the release. The fact that it is included as it is in the instrument raises the question of whether its inclusion was a typographical mistake, or whether its inclusion indicates that something else was omitted by mistake. Neither possibility is exclusive, and one is no more likely than the other. This question arises from the face of the instrument itself, without any consideration of the language in the mortgages or of the

9

affidavits.

The word "from" especially when considered in light of the specific reference in the opening paragraph to the "approximately 540 acres", means that the release was intended to establish that only that particular property was intended to be released from the mortgages. The Court does not agree that this can be determined solely from reading the release, but does agree that the use of the word "from" together with the references to the "540 acres" does raise the question of why that language is included in the release. Therefore, the Court finds that the release is ambiguous, and must determine whether or not there are any genuine issues of material fact as to what it is intended to mean on the basis of evidence other than just the face of the instrument.

"Related instruments between the same parties in respect to the same subject-matter may be looked to by the court in ascertaining the true intent of the parties." *Taylor v. Hancock,* 227 Ala. 645, 151 So. 596, 597 (1933). Also, when one "instrument refers to another so it can be identified, each can be looked to, and both should be considered together for purposes mentioned by the reference." *Turk v. Turk*, 206 Ala. 312, 89 So. 457, 459 (1921). Therefore, the mortgages identified in the release must be considered. As indicated above, the only real property included in all three of the mortgages is the 540 acres. In the two mortgages that also include other tracts, that tract is specifically identified as being "in the aggregate, 540 acres, more or less." Thus, there is a specifically identifiable tract of land in each of the mortgages which is reasonably identifiable with the reference in the release to "approximately 540 acres of land." Under the circumstances, this is similar to a situation in which the release refers, for example, to "Lot 25" when the mortgages include Lots 25, 26 and 27. Clearly, it would be understood which lot was being referred to in such a release.

Case 04-01009    Doc 27    Filed 12/06/04    Entered 12/06/04 13:49:35    Desc Main
Document      Page 10 of 13

The parties do not dispute that the affidavits clearly indicate that only the 540 acres was supposed to be released, and not the entire mortgages. It is true that the document as drafted is not a paragon of clarity, but it is for that reason that a prudent man would have a duty to inquire as to its meaning. By reviewing the mortgages referred to in the release, it would be apparent that only the 540 acres were released. The determination by the Court that the release is ambiguous on its face and that the parties released only the 540 acres, therefore renders questions of priority of the judgment in favor of the United States over the status of the Trustee as moot.

The Court is of the opinion that no genuine issues of material fact exist and that the summary judgment motion of SouthTrust is due to be granted. The motions for summary judgment of the United States and the Trustee are due to be denied.

## ORDER

It is hereby ORDERED as follows:

1. The motion for summary judgement of SouthTrust Bank is hereby GRANTED. This Court declares that the "Release and Cancellation of Mortgages" recorded at Book 713, Page 147 of the Monroe County records is a release of only the following real property located in Monroe County, Alabama, to-wit:

<u>Parcel One</u>

The Southeast 1/4; the East 1/2 of the Southwest 1/4; the Southwest 1/4 of the Northeast 1/4; and the South 1/2 of the Northwest 1/4 of the Northeast 1/4, all in Section 4, Township 7 North, Range 9 East, Monroe County, Alabama.

<u>Parcel Two</u>

The North 1/2 of the Northeast 1/4; the Southwest 1/4 of the Northeast 1/4; the North 1/2 of the Northwest 1/4; and the Southeast 1/4 of the Northwest 1/4, all in Section 9, Township 7 North, Range 9 East, Monroe County, Alabama.

from the following mortgages, to-wit:

Case 04-01009    Doc 27    Filed 12/06/04    Entered 12/06/04 13:49:35    Desc Main
Document      Page 11 of 13

Mortgage from Diane O. Stallworth and Louise B. Owens to SouthTrust Bank dated April 26, 1996, and recorded at Book 489, Page 181 of the records of the Probate Court of Monroe County; and

Mortgage from Diane O. Stallworth and Stallworth Timber Company, Inc. to SouthTrust Bank dated June 16, 2000, and recorded at Book 571, Page 58 of the records of the Probate Court of Monroe County;

though the following mortgage is entirely released and cancelled, to-wit:

Mortgage from Dianne O. Stallworth to SouthTrust Bank dated August 4, 1998, and recorded at Book 532, Page 183 of the records of the Probate Court of Monroe County.

2. The motion for summary judgment of the United States of America is DENIED.

3. The motion for summary judgment of Theodore Hall, Trustee, is hereby DENIED.

4. Each party is to bear its own costs.

Dated: December 6, 2004

/s/ William S. Shulman
WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE

# EXHIBIT "A"

RELEASE AND CANCELLATION OF MORTGAGES

STATE OF ALABAMA

COUNTY OF MONROE

WHEREAS, on April 26, 1996 a mortgage was given by Diane O. Stallworth and Louise B. Owens ("Mortgagors") to SouthTrust Bank ("Mortgagee") and same was recorded in Mortgage Book 489, Page 181 in the Probate Records of Monroe County, Alabama on April 29, 1996 which mortgage covered approximately 540 acres of land in Monroe County, Alabama and on August 4, 1998 a mortgage was given by Diane O. Stallworth ("Mortgagor") to SouthTrust Bank and same was recorded in Mortgage Book 532, Page 183 in the Probate records of Monroe County, Alabama on August 7, 1998 which covered the same said lands and on June 15, 2000 a mortgage was given by Diane O. Stallworth to SouthTrust Bank and same was recorded in Mortgage Book 571, Page 58 in the Probate Records of Monroe County, Alabama on June 20, 2000 on same said lands.

WHEREAS, Mortgagor and Mortgagee desire to release the property from the mortgages and to cancel same.

THEREFORE, SouthTrust Bank, the holder of said mortgages, does hereby fully and completely release and cancel from said mortgages.

IN WITNESS WHEREOF, SOUTHTRUST BANK has caused these presents to be executed in its corporate name and its corporate seal to be affixed hereto, by its duly authorized officer on this the _30th_ day of _July_, 2002.

13